UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VERNA GORDON, as Administrator of the Estate
of Christopher H. Jackson; and VERNA GORDON,
individually as mother of the deceased,

                                      Plaintiffs,

                                   v.                              5:09-CV-1182
                                                                   (FJS/TWD)

COUNTY OF ONONDAGA; ONONDAGA COUNTY
SHERIFF'S DEPARTMENT; TOWN OF CLAY;
CLAY POLICE DEPARTMENT; and KEVIN DRUMM,
as an employee of Clay Police Department and as an
individual,

                                      Defendants.
_____

APPEARANCES                                                OF COUNSEL

**OFFICE OF CHRISTINA G. CAGNINA**            **CHRISTINA G. CAGNINA, ESQ.**
108 West Jefferson Street – Suite 300
Syracuse, New York 13202
Attorneys for Plaintiff

**ONONDAGA COUNTY DEPARTMENT**         **CAROL L. RHINEHART, ESQ.**
**OF LAW**
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, New York 13202
Attorneys for Defendants County of Onondaga
and Onondaga County Sheriff's Department

**MARTIN & RAYHILL, P.C.**  **KEVIN G. MARTIN, ESQ.**
421 Broad Street
Utica, New York 13501
Attorneys for Defendants Town of Clay, Clay
Police Department, and Kevin Drumm

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff brings this action alleging various claims against Defendants for negligence, assault, battery, and excessive force, as well as various constitutional violations.

Plaintiff originally filed her complaint on September 30, 2009, in New York State Supreme Court, Onondaga County. On October 21, 2009, Defendants Town of Clay and Town of Clay Police Department removed the action to this Court on the basis that this Court has federal question jurisdiction over this matter. Plaintiff filed her Amended Complaint in this Court on July 1, 2010. In her Amended Complaint, Plaintiff seeks damages on all causes of action in the amount of $10,000,000.

In her Amended Complaint, Plaintiff alleges that Clay Police Officer Kevin Drumm used a TASER to subdue her son Christopher during an arrest on the evening of March 3, 2008. Christopher Jackson subsequently died and was declared dead at 10:40 p.m. that night. Plaintiff alleges that

> Decedent Jackson was "tasered" [sic] wrongfully and without just cause due to the careless and negligent acts and/or omissions of the Onondaga County Sheriff's Department and/or the Town of Clay Police Department, their agents, servants, or employees . . . [who] were acting within scope of their employment . . . [and who] had a duty to exercise reasonable care and conduct themselves in such a manner as to insure the safety of the decedent Jackson under the circumstances . . . [and who] knew or should have known that the

    injuries to Decedent Jackson were reasonably foreseeable . . . [and a]s a direct and proximate result of the actions of the Defendants, Decedent Jackson endured pain and suffering, acute distress, and death.

Plaintiff also alleges that "no law enforcement officer made any attempt to render first aid or any aid to Mr. Jackson." Plaintiff also highlights the fact that Decedent had suffered a gunshot wound years earlier and still had a bullet in his head on the night of the incident.

  Based upon these allegations, Plaintiff asserts eleven causes of action:

(1)  A negligence claim against the Sheriff's Department and/or the Police Department for the wrongful and unjust use of a TASER on Decedent

(2)  A negligence claim against Defendants for failing to recognize and treat Decedent's injuries

(3)  A negligence claim against Defendants for negligent hiring, training, and supervision

(4)  Apparently an assault claim against Defendants for the use of a TASER upon Decedent

(5)  Apparently a battery claim against "Defendants" for "willfully, maliciously, and without just cause discharge[ing] a taser [sic] at Decedent Jackson causing him severe pain, suffering, and eventually death"

(6)  A claim against Defendants for negligent assault, battery, and excessive force

(7)  A claim against Defendants for violating Decedent's rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution and the like clauses and guarantees of the New York State Constitution

(8)  A claim against Defendants for deprivation of Plaintiff's First Amendment rights and other rights under the United States Constitution and New York State Constitution, and punitive damages

(9)  A claim for damages to Plaintiff's home and possessions in the amount of $3,000.00

(10) A claim apparently against Defendant Kevin Drumm as an individual for negligent and unlawful employment of excessive force against the Decedent, thereby causing pain, suffering, and death and violating his rights under the United States Constitution and New York State Constitution

(11) A claim apparently against Officer Drumm, the Town of Clay, and the Police Department for negligence and excessive force, thereby violating Decedent's rights under the United States Constitution and New York State Constitution

Currently before the Court are Defendants County of Onondaga and Onondaga County Sheriff's Department motion for summary judgment, Defendants Town of Clay, Clay Police Department, and Kevin Drumm's motion for summary judgment, and Plaintiff's motion for partial summary judgment.

## II. DISCUSSION

### A. Preliminary matters

Plaintiff names the Town of Clay Police Department and the Onondaga County Sheriff's Department as Defendants in the lawsuit. Under New York State law, "departments which are merely administrative arms of a municipality[] do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (citations omitted); *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citations omitted). Here, because Plaintiff has sued the Town of Clay and the County of Onondaga, the Court dismisses Plaintiff's claims against the Town of Clay Police Department and Onondaga County Sheriff's Department because neither of these entities is suable and Plaintiff's claims against these entities are redundant of her claims against Defendants Town of Clay and the County of Onondaga.

**B.     Plaintiff's state-law claims on behalf of Decedent[1]**

Although Defendants have raised a number of arguments to support their position that the Court should dismiss Plaintiff's state-law claims, Plaintiff's failure to file a timely Notice of Claim is dispositive of this issue. New York General Municipal Law requires that a plaintiff file a notice of claim with a municipality within ninety days of accrual of a claim sounding in tort. *See* N.Y. Gen. Mun. Law § 50-e (McKinney 2014). A notice of claim on behalf of a decedent must be served within ninety days regardless of when the estate is appointed. *See Miller v. Sullivan Cnty*, 36 A.D.3d 994, 995 (3d Dep't 2007); *Jae Woo Yoo v. New York City Health & Hosps. Corp.*, 239 A.D.2d 267, 267-68 (1st Dep't 1997).[2] Service of a notice of claim more than ninety days after accrual of a cause of action subject to this limitation is a "nullity." *See Alston v. Aversano*, 24 A.D.3d 399, 400 (2d Dep't 2005) (citations omitted). Once the statutory ninety-day period has expired, a plaintiff may only satisfy the notice of claim requirement if, within one year and ninety days of the accrual of the claim, she applies to the court for leave to file a late notice of claim, and the court grants such leave. *See id*. (citation omitted). New York's Court of Appeals has ruled that courts lack the authority to extend the time to file a notice of claim once the statute of limitations expires. *See Pierson v. City of New York*, 56 N.Y.2d 950, 955-56 (1982).

---

[1] The analysis of these claims applies equally to the Defendant Town of Clay and Defendant County of Onondaga.

[2] The General Municipal Law does provide an exception for wrongful death actions, allowing a plaintiff to bring such a suit where she has provided the municipality with a notice of claim within ninety days of the appointment of the decedent's estate. *See* N.Y. Gen. Mun. Law § 50-e(1)(a). Here, Plaintiff has not brought a wrongful death action.

Here, Plaintiff filed her Notice of Claim on August 18, 2008. This was 168 days after her cause of action accrued and renders her state-law claims against Defendants Town of Clay and the County of Onondaga time-barred. In addition, she commenced this action on August 18, 2009. That was one year and 168 days after the event upon which her claims are based occurred and also voids her state-law claims.[3] Accordingly, the Court grants Defendants' motions for summary judgment with respect to all of Plaintiff's state-law claims.[4]

## C. Plaintiff's constitutional claims on behalf of Decedent

### 1. Standard of review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's role is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In making this determination, the court must

---

[3] The Court notes that Plaintiff's argument that she did not become aware of her cause of action until after receiving the medical examiner's report in September 2008 is disingenuous given that Plaintiff filed her Notice of Claim on August 18, 2008.

[4] Plaintiff's state-law claims include the following: (1) her first cause of action, which is apparently against the Town of Clay and County of Onondaga; (2) her second cause of action, apparently against the Town of Clay, County of Onondaga, and Officer Drumm, to the extent that it constitutes a state-law claim for negligent provision of medical aid; (3) her third cause of action, apparently against the Town of Clay, County of Onondaga, and Officer Drumm; (4) her fourth cause of action, apparently against the Town of Clay and Officer Drumm; (5) her fifth cause of action, apparently against the Town of Clay and Officer Drumm; (6) her ninth cause of action, apparently against the Town of Clay, County of Onondaga, and Officer Drumm; (7) those portions of her sixth cause of action regarding negligent assault and battery, apparently against the Town of Clay and Officer Drumm; and (8) those portions of her tenth and eleventh causes of action regarding negligence, apparently against the Town of Clay and Officer Drumm.

6

view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party. *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06–CV–871, 2010 WL 2735701, *3 (N.D.N.Y. July 9, 2010) (citation omitted).

Summary judgment is appropriate if the party that bears the burden of proof at trial fails to establish an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson,* 477 U.S. at 247–48. Thus, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) (citation omitted).

### 2. *Plaintiff's First Amendment claim*

Where a defendant has allegedly interfered with a plaintiff's First Amendment right to engage in some form of speech or conduct, the defendant's interference is only actionable if the plaintiff's speech or conduct touched on a matter of public concern. *See Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004). Here, Plaintiff does not allege that she or Decedent engaged or attempted to engage in speech or conduct touching upon matters of public concern. Instead, Plaintiff alleges that Defendants prevented her from "approaching and assisting [Decedent], providing medical information or getting medical assistance for him." Even if such an allegation were true – and Plaintiff offers no evidence, not even her own testimony, that she requested or attempted to provide any kind of assistance – it would not rise to the level of interference with conduct touching on a matter of public concern. Accordingly, the Court grants Defendants' motions for summary judgment with respect to Plaintiff's First Amendment claim.

7

### *3. Plaintiff's Fourth Amendment claim of excessive force*

The question of excessive force in an arrest context depends on whether the force the officer used was objectively reasonable "'in light of the facts and circumstances confronting [the officer.]'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The reasonableness of force used depends on several facts within those circumstances, including "'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" *Id.* (quoting *Thomas [v. Roach]*, 165 F.3d [137,] 143 [(2d Cir. 1999])).

In cases involving TASERs and other Electronic Control Devices ("ECDs") or Conductive Energy Devices ("CEDs"), the Second Circuit has held that it is not unreasonable for law enforcement officers to use such devices against suspects where the suspects are actively resisting arrest. *See Crowell v. Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010). In *Crowell*, the Court of Appeals affirmed the district court's grant of summary judgment, holding that officers' use of stun guns was objectively reasonable and not excessive, even though the suspects were political protesters who "were arrested for relatively minor crimes of trespass and resisting arrest and were not threatening the safety of any other person with their behavior." *Id.* at 594-95. The Court also found it relevant to the analysis that officers attempted to use other means to effectuate the arrest and "used the taser only as a last resort, after warning the Plaintiffs . . . ." *Id.* at 595.

Here, the Court finds that Officer Drumm's use of his TASER was reasonable even though the circumstances of the evening are in some dispute. The factual disputes include

8

disagreement among witnesses as well as discrepancies between the same witness's accounts given on different dates. For instance, Mr. Rodney Thomas, Plaintiff's only eyewitness to the confrontation between Officer Drumm and Decedent, gave a statement on the night of the incident but later claimed during his deposition that his prior statement was inaccurate. *See* Dkt. No. 52-6, Deposition of Rodney L. Thomas ("Thomas Tr.") at 9-10 (describing as "inaccurate" his previous affidavit's statement that "Chris was yelling at the cop, you ain't going to Tase me. Chris continued yelling and going crazy walking toward the cop . . ."), 10 (describing as "inaccurate" his previous affidavit's statement that "Chris still continued toward the cop in a threatening manner going crazy and when Chris got within 3 feet of the cop, he stepped back, Tasing Chris in the chest."). In the same deposition, however, when asked again to describe the facts of the incident, Mr. Thomas admitted that the most relevant assertions in the affidavit, including statements he had just described as inaccurate, were in fact true. *See* Thomas Tr. at 31 ("[Chris] was yelling and telling [Officer Drumm] to get the hell out."), at 29 ("Q. What did Chris respond when he was warned that he was going to be Tased? A. Told him that he wasn't going to Tase him. Q. And he was advancing towards the officer, is that correct? A. Yeah, he took a step forward . . ."), at 10 ("Chris took a step forward and the cop would take a step back.").

Considering all of the evidence, it is apparent that Decedent evaded and resisted officers' attempts to subdue him. *See* Dkt. No. 52-5, Deposition of Verna Gordon on May 10, 2011 ("Gordon Tr.") at 28 ("I looked up and saw the deputies up on the second floor. . . . Chris turned around and looked and he took off running down the first floor."). It is also indisputable that Decedent was shouting, throwing objects, and acting in a manner that a law enforcement officer might reasonably have interpreted as dangerous to Officer Drumm, Decedent, Plaintiff, or others.

9

*See* Gordon Tr. at 21-22 ("[Chris] started throwing things, that's when I called 911. . . . I was talking to 911 and I told her to send the police over there because my son was throwing things. . . . [Chris] ran in, snatched the phone out of my hand."); Dkt. No. 52-7 Affidavit of Rodney L. Thomas dated March 3, 2008 ("Thomas Aff.") ("Chris was throwing things in the apartment and being very verbal, swearing and yelling. . . . [Later on, Chris] was coming toward the cop in a threatening manner. . . . Chris continued yelling and going crazy walking toward the cop. . . ."); Thomas Tr. at 31 ("[Chris] was yelling and telling [Officer Drumm] to get the hell out."); Dkt. No. 52-9, Affidavit of Jody R. Mazzole dated March 3, 2008 ("Mazzole Aff.") ("The screaming and yelling went on from 5:00pm till about 9:15pm until the police arrived." [sic]); Dkt. No. 52-9, Affidavit of Deborah J. Mazzole dated March 3, 2008 ("I just hear[d] a lot of banging coming from the apartment 213. . . ."); Affidavit of Deputy Matthew Carlson (undated) ("Carlson Aff.") at 1 ("The male was screaming and yelling at a female, who was later identified as his mother. . . . [H]e screamed [at Sheriff's Deputies], 'Fuck you, don't tell me to calm down, fucking come down here.' As Jackson said this he put his hand into a fist and was moving his arms up and down in a threatening manner. . . ."); Dkt. No. 52-10, Affidavit of Deputy Passino (undated) ("Passino Aff.") at 1 ("I observed a black male wearing a white T-shirt screaming at a black female in a red bathrobe. . . . Jackson replied [to a deputy's order to stop yelling] with "[F]uck you don't tell me to calm down and stop yelling, come on down here motherfucker."); Dkt. No. 52-16, Affidavit of Kevin Drumm dated March 5, 2008 ("Drumm Aff. 2008") at 1 ("Control . . . advised me that the 911 call taker could hear a male voice in the background saying I am going to kill you."[5]), 3 ("The male walked in a deliberate manner towards me with his fists clenched

---

[5] Plaintiff casts doubt on Defendants' allegation that officers were aware of Decedent's threat to kill someone, as heard by the 911 operator. She argues that "it is highly suspect that the officers could have been informed that Mr. Jackson had threatened to kill someone where a review of the

and flailing his arms. . . . The male kept screaming, 'Fuck you, you don't need to be here and get the fuck out.' . . . I stepped back . . . I could not retreat back any further. . . . The man's left had grabbed my uniform shirt and grasped it."); Dkt. No. 52-12, Affidavit of Kevin Drumm dated March 29, 2013 ("Drumm Aff. 2013") ¶¶ 3, 12-18; Dkt. No. 52-14, Deposition of Kevin Drumm dated May 9, 2011 ("Drumm Tr.") at 107-114.

Furthermore, given Decedent's aggressive behavior, the facts support a finding that Officer Drumm took steps to resolve the situation peacefully before resorting to his TASER. Both Mr. Thomas and Officer Drumm testified that Officer Drumm's actions were not immediately confrontational and that he backed away from Decedent when Decedent advanced toward him while yelling. *See* Thomas Tr. at 10 ("Chris took a step forward and the cop would take a step back."); at 31 ("[Chris] was yelling and telling [Officer Drumm] to get the hell out."); Drumm Aff. 2008 at 3 ("I continuously gave him verbal commands to get back and calm down. . . . I had my hands up in front of me with the palms toward the floor, in a manner trying to calm him down. . . . I stepped back and . . . I could not retreat back any further."); Drumm Aff. 2013 at ¶¶ 15-16.

Both eyewitnesses also agree that Officer Drumm repeatedly warned Decedent that, if he did not stop, Officer Drumm would use his TASER to subdue him, but Decedent disregarded those warnings. *See* Thomas Aff. at 2 ("[The cop] told Chris several times in a loud voice stop or I will taz you. [sic] Chris stopped for a second but continued at the cop. Chris was yelling at the cop you ain't gonna taz me. [sic]"); Thomas Tr. at 11 ("Then he said a couple times he's

---

911 calls clearly indicates that this threat would have occurred within seconds <u>after</u> the officers already entered the apartment complex." *See* Plaintiff's Response at 9. Plaintiff provides no citation to the record for this "review," nor does she explain how she determined the officers' location at the time they might have heard about Decedent's threat, nor does she indicate why it is so doubtful that Control might have advised Officer Drumm over his radio about the threat after he entered the building.

11

going to Tase him."), 29 ("Q. What did Chris respond when he was warned that he was going to be Tased?  A. Told him that he wasn't going to Tase him.  Q. And he was advancing towards the officer, is that correct?  A. Yeah, he took a step forward . . .");  Drumm Aff. 2008 at 3 ("I gave repeated verbal commands to the male, saying for him to get back or your [sic] getting tased. . . . [sic]  The male continued flailing his arms and swearing, saying 'Fuck you, you won't tase me.").

Plaintiff cites no evidence or authority to support her argument that Officer Drumm, who was approximately six feet tall and weighed approximately 165 pounds, *see* Dkt. No. 50-2, TASER® X26 / M26 Volunteer Exposure Report ("Exposure Report"), should have believed that a bare-handed physical engagement with Decedent, who was six feet one inch tall and weighed 146 pounds, *see* Dkt. No. 66, Autopsy of Christopher H. Jackson on Aug. 18, 2008 ("Autopsy") at 3, was a reasonably safe means of resolving the situation.  The fact that Officer Drumm was at that moment alone in the room with two men, one of whom was apparently a friend of Decedent, further undermines the supposed reasonableness of an attempt by Officer Drumm to wrestle Decedent into submission.

Finally, Plaintiff cites no legal authority holding that the application of a CED against a physically or mentally disabled person is presumptively unreasonable or excessive.[6]

Accordingly, for all of these reasons, the Court concludes that there are no material facts in dispute regarding the issue of whether Officer Drumm's use of his TASER to subdue Decedent was a reasonable use of force under the circumstances.  Rather, based on all of the

---

[6] There is no evidence regarding what role, if any, the bullet in Decedent's head played in Decedent's death, or the fact that Decedent had Crohn's disease and had taken drugs.  In any event, the Court cannot presume that Officer Drumm, who was apparently aware of only the bullet, could have predicted the medical result of this combination of factors and should therefore have acted differently when he found himself in a room with Decedent advancing toward him.

evidence in the record, no reasonable trier of fact could conclude that Officer Drumm's use of force was constitutionally excessive in this case. Therefore, the Court grants Defendants' motions for summary judgment with respect to Plaintiff's Fourth Amendment excessive force claim.

### *4. Plaintiff's Fourth Amendment claim for negligent training*

In order to succeed on a claim for negligent training or supervision against a municipality, a plaintiff must first establish that a municipal employee has committed a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) (citation omitted). If a municipal employee has committed such a violation, the plaintiff must also demonstrate that the municipality, "through its *deliberate* conduct . . . was the 'moving force' behind the injury alleged." *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

In order to hold Defendant Town of Clay liable for an unconstitutionally inadequate training or supervision policy, the Court would be required to find that the Town was deliberately indifferent to the risk of a constitutional deprivation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To establish deliberate indifference, a plaintiff must prove that the need for more or better supervision was or should have been obvious, as demonstrated, for example, "through repeated complaints of civil rights violations[.]" *Vann v. City of New York*, 72 F.3d 1040, 1049 (2nd Cir. 1995) (citations omitted). A single incident, especially an action of an employee below the policymaking level, is generally insufficient to raise an inference of an unconstitutional policy. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d

Cir. 1993), *overruled on other grounds* by *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (citations omitted).

Here, Plaintiff has failed to allege facts sufficient to establish a constitutional violation, and she has failed to allege facts sufficient to establish municipal liability under a theory of inadequate training or supervision. Instead, Plaintiff has dwelt at length on what she alleges is insufficient documentation of Officer Drumm's training within the records that Defendants produced in discovery. Even if the Department's training records were unusually sparse (and Plaintiff offers neither evidence, authority, nor argument to indicate what proper records of such training should include), record keeping is not an element of the negligent training inquiry.

Furthermore, Plaintiff has not alleged facts sufficient to prove that Defendant Town was deliberately indifferent to an obvious deficiency in police training. To the contrary, the record indicates that Officer Drumm received a full day of training on the use of his TASER. *See* Exposure Report; Drumm Tr. at 13 ("Q. And how long was that training for? A. For the Taser . . . I believe it was an eight hour block of in-service followed by an exam and practical."). Plaintiff casts doubt on the probative value of the Exposure Report but neglects to mention that the document contains Officer Drumm's handwritten name, signature, age, sex, height, weight, the type of TASER used against him in training, the effects of the TASER upon him ("EXTREME DISCOMFORT, PARALYZED MUSCLES"), and whether he could fight its effects and continue an attack ("ABSOLUTELY NOT"). *See* "Exposure Report".

Additionally, Plaintiff refers without citation to unspecified conflicts within the Police Department's policy and guidance regarding the use of TASERs and other impact weapons. Even if this Court were to find that Officer Drumm violated Decedent's rights when he later used his TASER, Plaintiff has offered no evidence that Officer Drumm's action was part of a pattern

14

or trend of similar violations that should have alerted Defendant Town to a deficient policy. As a result, a trier of fact could not reasonably find that Defendant Town exhibited deliberate indifference toward any risk of constitutional violations. Therefore, the Court finds that Plaintiff has not stated a claim against the Defendant Town of Clay based on negligent training, and grants Defendants' motions for summary judgment with regard to this claim.

### 5. *Plaintiff's Fifth and Sixth Amendment claims*

Where a plaintiff does not address a claim in response to a defendant's motion for summary judgment, a court may deem that claim abandoned. *See, e.g.*, *Tinnin v. Section 8 Program of City of White Plains*, 706 F. Supp. 2d 401, 408 n.5 (S.D.N.Y. 2010) (citations omitted). Here, Plaintiff did not respond to Defendants' motions for summary judgment with regard to her claims under the Fifth and Sixth Amendment, nor did she respond regarding her unspecified claims under the New York Constitution or what is apparently her claim against Defendant County of Onondaga for failure to intervene. Since Plaintiff did not respond to Defendants' summary judgment motions regarding these claims, this Court deems them abandoned and grants Defendants' motions for summary judgment with respect to these claims.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's claims against Defendants Town of Clay Police Department and Onondaga County Sheriff's Department are **DISMISSED** because these Defendants are not

suable entities and the claims against them are redundant of the claims against Defendants Town of Clay and County of Onondaga; and the Court further

**ORDERS** that Defendants' motions for summary judgment are **GRANTED** with respect to Plaintiff's state-law claims because Plaintiff did not file a timely Notice of Claim; and the Court further

**ORDERS** that Defendants' motions for summary judgment are **GRANTED** with regard to Plaintiff's federal constitutional claims; and the Court further

**ORDERS** that Defendants' motions for summary judgment with respect to the remainder of Plaintiff's claims are **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED**

Dated: November 13, 2014
       Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge